**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MWANIKI JOHNSON, | ) | CASE NO:   3:07-cv-0095 |
| | ) | |
| Petitioner, | ) | JUDGE LIOI |
| | ) | |
| v. | ) | MAGISTRATE VECCHIARELLI |
| | ) | |
| STUART HUDSON, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent, | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Petitioner, Mwaniki Johnson ("Johnson"), challenges the constitutionality of his conviction in the case of *State v. Johnson*, Case No. CR 03-1052 (Lucas County 2003). Johnson filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 12, 2007. Initially, the court denied the petition on the ground that it was time-barred. On appeal, the Sixth Circuit held that the petition was subject to equitable tolling and remanded the case on April 29, 2011 for further proceedings. For the reasons set forth below, Johnson's petition should be **DENIED.**

I

The state appellate court hearing Johnson's direct appeal found the following facts to be relevant to his case:

> On January 9, 2003, appellant was charged in a two-count indictment with one count of felonious assault in violation of R.C. 2903.11, with a firearm specification

> and a repeat violent offender specification; and one count of attempted murder in violation of R.C. 2923.02, with a firearm specification and a repeat violent offender specification.
>
> {¶ 9} The charges arose out of a shooting that occurred on the night of November 14, 2002, in Toledo, Ohio. The incident occurred at the home of appellant's girlfriend, Sheronda Daugherty, following an argument between appellant and the victim, Anthony King. According to testimony at trial, at one point during the dispute, appellant left the room and returned with a shotgun. Appellant shot King in the back as King walked out of the house. Appellant then came out of the house, said something to King as he lay on the ground, walked toward the basement of the house and left the scene. Police apprehended appellant a short time later riding in his father's truck.
>
> {¶ 10} The matter proceeded to trial and on April 30, 2003, the jury returned a verdict of guilty as to attempted murder and the firearm specification but did not return a verdict as to the felonious assault count. Over appellant's objection, the trial court ordered the jury to deliberate further and return a verdict as to Count 1. The jury then returned a verdict of guilty as to the felonious assault count and the firearm specification. On May 6, 2003, the trial court held a hearing to determine whether appellant was a repeat violent offender pursuant to R.C. 2941.149. The trial court found appellant to be a repeat violent offender following the testimony of appellant's probation officer that he had previously been charged with and convicted of felonious assault after shooting someone in the chest. On May 21, 2003, the matter was called for a sentencing hearing and appellant was sentenced to serve ten years imprisonment for the attempted murder conviction, three years for the firearm specification and an additional two years based on the finding that he was repeat violent offender. The trial court ordered that all of the sentences be served consecutively. At that time, the trial court did not impose a sentence for the felonious assault conviction and the firearm specification attached to that charge.

*State v. Johnson*, 2005 WL 635023, at *1-*2 (Ohio App. March 18, 2005). In sentencing Johnson, the trial court stated that it had "considered the record, oral statements, any victim impact statement and presentence report prepared, . . . and has balanced the seriousness and recidivism factors under R.C. 2929.12." Judgment Entry, Answer, Exh. 5, p. 1.

Johnson began serving the sentence imposed by the court on May 21, 2003. On June 17, 2003, the trial court called the case for a sentence review hearing:

> At that time, the trial court ordered the original sentence modified.  The trial court sentenced appellant to ten years for the attempted murder conviction and eight years for the felonious assault conviction.  In addition, appellant was sentenced to serve three years for each firearm specification, four years for the repeat violent offender finding as to the felonious assault conviction, and two years for the repeat violent offender finding as to the attempted murder conviction.  The trial court then ordered the two fifteen-year sentences to be served concurrently with the exception of the three-year firearm specification from Count 1, which was to be served consecutively, for a total sentence on all charges of eighteen years.

*Johnson*, 2005 WL 635023 at *2.  In modifying Johnson's sentence, the trial court again stated that it had "considered the record, oral statements, any victim impact statement and presentence report prepared, . . . and has balanced the seriousness and recidivism factors under R.C. 2929.12."  Order, Answer, Exh. 6, p. 1.  The trial court also found, *inter alia*, "that the defendant caused physical harm that carried a substantial risk of death to the victim and that involved substantial permanent incapacity, and that involved substantial permanent disfigurement."  *Id.*  Based on those findings, the court concluded that it should impose the longest available prison terms for the two offenses.

Johnson filed a notice of appeal on July 17, 2003.  In his brief in support of his appeal, Johnson raised five assignments of error:

> I. The trial court erred by instructing the jury that they could consider flight from the scene in determining the guilt of a defendant.
>
> II. The trial court erred in finding that defendant was a repeat violent offender.
>
> III. The trial court erred by violating the Double Jeopardy Clause of the State of Ohio and the United States Constitutions by allowing the jury to consider felonious assault after they returned a verdict on the attempt [sic] murder charge.
>
> IV. The trial court erred by violating the Double Jeopardy Clause of the State of Ohio and the United States Constitutions by entering a sentence for felonious assault after defendant's sentencing hearing had been held and

>
> the court had already journalized its sentencing order.
>
> V. The trial court erred by imposing the maximum sentence.

On March 18, 2005, the state appellate court affirmed the judgment of the trial court.

Johnson timely appealed the decision of the state appellate court to the Ohio Supreme Court. Johnson asserted five propositions of law in his memorandum in support of jurisdiction:

> Proposition of Law I: The trial court erred by when [sic] it allowed the jury to return verdicts on both the felonious assault and attempted murder charges.
>
> Proposition of Law II: The trial court erred in bringing defendant back from prison to be "re-sentenced" to additional incarceration after he had already begun serving his sentence.
>
> Proposition of Law III: The trial court erred by imposing the maximum sentence.
>
> Proposition of Law IV: The trial court erred by instructing the jury that they could consider flight from the scene in determining the guilt of the defendant.
>
> Proposition of Law V: The trial court erred in finding that defendant was a repeat violent offender.

(Capitalization altered from the original.) On August 10, 2005, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On June 7, 2005, while Johnson's application for review was pending in the Ohio Supreme Court, Johnson filed in the state appellate court a timely application to reopen his direct appeal pursuant to Ohio App. R. 26(B) ("26(B)"). Johnson raised one assignment of error in his application:

> Appellant was denied his Sixth Amendment right to the effective assistance of appellate counsel because counsel failed to brief, as an assignment of error, trial counsel's ineffective assistance for his failure to object to the illegal sentence imposed under existing law at the time of sentencing, which prejudiced appellant

-4-

>to a substantial increase in the term of appellant's confinement. U.S. Const. Amend. VI, XIV; Ohio Const. Art. I §§ 10 and 16.

On June 28, 2005, the state appellate court denied Johnson's application to reopen. The court found that appellate counsel had, in fact, objected to Johnson's sentence, although appellate counsel had not objected on the ground that trial counsel was ineffective for failing to raise the issue. The state appellate court also found that appellate counsel was not ineffective for failing to object to the sentence in light of the holding in *Blakely v. Washington*, 542 U.S. 296 (2004), because the appellate court had previously ruled that *Blakely* did not invalidate Ohio's sentencing laws.

On July 8, 2005, Johnson filed in the state appellate court a motion to certify a conflict. Johnson raised three issues in his motion:

>First Issue: Is [sic] Ohio sentencing laws unconstitutional in light of Blakely v. Washington is [sic] that a trial court obtains authority to impose <u>more than minimum sentence</u>, based on findings of fact, other than a prior sentences, which were neither admitted by defendant nor found in the jury verdict?
>
>Second Issue: Does the trial court have the authority to impose another offense upon a defendant with consecutive sentences, after defendant has been sent to the executive branch of the penal system, due to a finding of a trial judge, and not a jury with the general assembly, when first sentence was journalized, is this constitutional in light of Blakely and Ohio sentencing laws, also of the United States Constitution?
>
>Third Issue: In light of Blakely v. Washington, does a trial judge make findings on a defendant comitting [sic] the worst form of a offense [sic] without a jury or defendant admitting to the findings of fact and impose a repeat violent offender specification, solely on the trial judge's finding and moreover impose, maximum, consecutive sentences, and be it so would it be unconstitutional due to existing law of or in Apprendi v. New Jersey (2000), 530 U.S. 466 and the 6th Amendment of the United States Constitution?

(Capitalization and punctuation altered from the original.) The state appellate court denied this motion on August 18, 2005. It reasoned that a motion to certify a conflict

required conflicting appellate court holdings on a rule of law and that the state appellate court's ruling on the effectiveness of Johnson's counsel was not a rule of law.

Johnson timely appealed the state appellate court's denial of his motion to certify a conflict to the Ohio Supreme Court. In his memorandum in support of jurisdiction, Johnson asserted the same three propositions of law raised in his motion to certify a conflict. On October 26, 2005, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

Johnson filed in this court a petition for writ of habeas corpus on January 12, 2007. He raised two grounds for relief in his petition:

> **GROUND ONE**: The trial court erred in bringing petitioner back from prison to be resentenced to additional incarceration after he had already begun serving his sentence in violation of the double jeopardy clause of the U.S. Constitution.
>
> **GROUND TWO**: The petitioner was denied the effective assistance of appellate counsel in violation of his Sixth and Fourteenth Amendment rights under the United States Constitution for counsels [sic] failure to raise the issue that the trial court erred in sentencing petition to maximum consecutive sentences in violation of the mandated [sic] embodied in Apprendi v. New Jersey, (2000) 530 U.S. 466; and Blakely v. Washington, (2004), 124 S.Ct. 2531.

Respondent filed an Answer/Return of Writ on June 11, 2007. Doc. No. 9. Johnson filed a Traverse on July 9, 2007. Doc. No. 10.

On July 10, 2007, the magistrate judge filed a Report and Recommendation recommending that Johnson's petition be dismissed as barred by the limitations statute at 28 U.S.C. § 2244(d)(1). The court adopted the magistrate's Report and Recommendation on November 30, 2007, denied Johnson's petition, and denied a certificate of appealability.

Johnson filed a notice of appeal on January 2, 2008. On August 4, 2008, the

Sixth Circuit denied Johnson's application for a certificate of appealability. Johnson also applied to the Supreme Court for a writ of *certiorari*, which was denied on November 3, 2008.

Johnson moved in the district court for relief from judgment on December 29, 2008, and the court denied this motion on April 16, 2009.

Johnson appealed the district court's denial of his motion for relief from judgment to the Sixth Circuit. On April 29, 2011, the Sixth Circuit reversed the district court's denial of Johnson's motion for relief from judgment and remanded the case to the district court for further proceedings. Thus, Johnson's petition now is ready for decision.

II

*A. Jurisdiction*

The trial judge in the Court of Common Pleas of Lucas County, Ohio sentenced Johnson. Johnson filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254:

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) & (d). Lucas County is within this court's geographic jurisdiction. Thus, this court has jurisdiction over Johnson's petition.

*B. Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited

-7-

circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All of Johnson's claims involve legal issues which can be independently resolved without additional factual inquiry.

*C.  Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

The exhaustion doctrine is principally designed to protect the state courts' role in

-8-

> the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted). Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits. 28 U.S.C. § 2254(b)(2).

Johnson has no state remedies available for his claims. Because no state remedies remain available to him, Johnson has exhausted state remedies.

*D.     Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982).

If the state argues that a petitioner has procedurally defaulted his claims, the

-9-

court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Respondent does not argue that Johnson has defaulted his grounds for relief.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only

-10-

if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* at 405. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001). The court will examine Johnson's two grounds for relief using the deferential standard applied to state court rulings on the petitioner's

-11-

claims.

*A.     Ground one:  Whether the trial court violated the Double Jeopardy Clause in bringing Johnson back from prison to be resentenced to additional incarceration after he had already begun serving his sentence*

Johnson argues that the trial court violated the Double Jeopardy Clause by resentencing him to an additional term of incarceration after he already had been remanded to the penal system to begin serving the terms previously imposed. According to Johnson, when a defendant has begun to serve his sentence, a resentence of that defendant violates his right to finality of sentence as protected by the Double Jeopardy Clause.  He also argues that when a sentence has been imposed, additional punishment in a subsequent proceeding violates the Double Jeopardy Clause.  Respondent denies that the trial court violated the Double Jeopardy Clause.

In *Brown v. Ohio*, 432 U.S. 161 (1977), the Supreme Court described the parameters of the protections offered by the Double Jeopardy Clause as follows:

> The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.  Where successive prosecutions are at stake, the guarantee serves "a constitutional policy of finality for the defendant's benefit."  That policy protects the accused from attempts to relitigate the facts underlying a prior acquittal, and from attempts to secure additional punishment after a prior conviction and sentence.

*Brown*, 432 U.S. at 165-66.  Thus, the core of the Double Jeopardy Clause is protection against multiple prosecutions or multiple sentences for the same offense.

In its review of the corresponding assignment of error on direct appeal, the state appellate court issued the following findings of fact and conclusions of law:

-12-

> {¶ 32} On May 21, 2003, the trial court sentenced appellant for the attempted murder conviction. The sentence is set forth on the docket sheet but there is no indication in the record that it was ever journalized. No sentence was imposed for the felonious assault conviction at that time. On June 4, 2003, the matter was called for a sentence review hearing, which was held on June 17, 2003. The trial court did not increase appellant's attempted murder sentence at the second hearing but did impose sentence for the conviction of felonious assault, ordering appellant to serve eight years for felonious assault, three years for the firearm specification and four years based on the finding that appellant is a repeat violent offender. The record reveals that the judgment entry of sentence for both convictions was journalized June 20, 2003.
>
> {¶ 33} While appellant had begun serving his attempted murder sentence by the time the sentence review hearing was held on June 17, 2003, that sentence was not increased at the hearing or modified in any way. At the hearing, the trial court imposed sentence for the felonious assault conviction, which it had not yet done. As indicated by the record, neither sentence was journalized until June 20, 2003. Because a court speaks through its journal, *State v. Ellington* (1987), 36 Ohio App.3d 76, 521 N.E.2d 504, a sentence does not become final until it has been entered on the journal. See *State v. Harris* (1981), 2 Ohio App.3d 48, 440 N.E.2d 572. Therefore, neither sentence was final until the June 17, 2003 order was journalized and, accordingly, the trial court did not err by imposing the sentence for felonious assault at that time.

*Johnson*, 2005 WL 635023 at *6. The state appellate court concluded, therefore, that Johnson's resentencing did not violate the Double Jeopardy Clause. Johnson does not challenge the state appellate court's statement of facts, only its legal conclusion that the resentencing did not violate his protections against double jeopardy.

Johnson's arguments are without merit. Johnson's resentencing did not violate any of the protections described by the Supreme Court as afforded by the Double Jeopardy Clause because the resentencing did not involve a second prosecution or multiple punishments for the same offense. *See Green v. United States*, 355 U.S. 184, 187-188 (1957) (finding that the prohibition against securing additional punishment after a prior conviction and sentence bars additional punishment *upon a conviction for which the defendant has already received punishment*). In Johnson's case, his resentencing

-13-

did not include an additional sentence upon a conviction for which he had already received punishment. Rather, he was sentenced upon his conviction for felonious assault, for which he had not previously been sentenced. Furthermore, there was no entry of judgment imposing *any* sentence upon Johnson at the time of his resentencing.

Johnson fails to demonstrate that the state appellate court's finding that his resentencing did not violate the Double Jeopardy Clause was contrary to, or was an unreasonable application of, a holding of the Supreme Court. Consequently, Johnson has not demonstrated that he is entitled to habeas relief. For this reason, Johnson's first ground for relief should be dismissed.

*B.     Ground two: Whether Johnson was denied the effective assistance of appellate counsel because appellate counsel did not argue that his trial counsel was ineffective*

Johnson argues that he received ineffective assistance of appellate counsel in violation of his Sixth Amendment rights because appellate counsel did not argue that trial counsel was ineffective. Johnson argues that trial counsel was ineffective for failing to object that (1) Johnson's maximum sentences for attempted murder and aggravated assault were unconstitutional in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely* and (2) Johnson's consecutive sentences as a repeat violent offender were unconstitutional in light of *Apprendi* and *Blakely*. Johnson contends that appellate counsel's failure to assert ineffective assistance of trial counsel on these grounds violated his right to effective appellate representation. Respondent replies that Johnson did not receive ineffective assistance of appellate counsel.

*1.     The legal framework of ineffective assistance of appellate counsel*

Defendants have a right to appointed counsel at trial and for the first appeal of

-14-

right.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  An appellant has no constitutional right to have every nonfrivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices are properly left to the sound judgment of counsel.  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002 (1990).  The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), is applicable to claims of ineffective assistance of trial and appellate counsel.  *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).

Petitioner's counsel was ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one:  "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms."

-15-

*Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167. Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision. *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167. The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167. A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). "Unreliability or

unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Courts are not required to consider both of the prongs described by *Strickland* in dismissing a claim of ineffective assistance of counsel. If a court determines that a petitioner fails to establish either of the two prongs required by *Strickland*, the court may dismiss a claim of ineffective assistance of counsel without examining the other prong. *Strickland*, 466 U.S. at 696.

*2. The legal framework applied to Johnson's case*

Johnson contends that his appellate counsel should have argued that Johnson's trial counsel was ineffective for failing to object to Johnson's sentences in light of *Apprendi* and *Blakely*. Johnson also contends that had appellate counsel asserted this claim, Johnson's direct appeal would have been successful.

Ohio's sentencing laws prior to the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006), consisted of sentencing ranges for various types of crimes. Ohio Rev. Code. 2929.14(B) ("§ 2929.14(B)") required sentencing courts to consider certain factors, found primarily at Ohio Rev. Code § 2929.12 ("§ 2929.12"), and to determine the impact of those factors on the seriousness of a defendant's crime and the defendant's likelihood of recidivism. Unless the sentencing court found that the defendant's crime was particularly serious or that the

defendant was especially likely to repeat his crime, a court was required to sentence the defendant (a) to the minimum term in the sentencing range for that type of crime and (b) if more than one crime had been committed, to concurrent rather than consecutive sentences.

The court sentencing Johnson, pursuant to the mandate of § 2929.14(B), considered the factors at § 2929.12 for balancing the seriousness of the crimes and the likelihood of recidivism. In imposing maximum and consecutive sentences, the court also found that Johnson caused physical harm that carried a substantial risk of death to the victim, involved substantial permanent incapacity, and involved substantial permanent disfigurement. The Ohio Supreme Court later found in *Foster* that this kind of judicial factfinding required under § 2929.14(B) was unconstitutional in light of *Apprendi* as clarified by *Blakely*.

The trial court sentenced Johnson in May and June of 2003. *Blakely* was decided on June 24, 2004. Johnson cannot argue that trial counsel was ineffective for failing to object to Johnson's sentence in light of *Blakely* because *Blakely* had not been decided at the time of Johnson's sentencing. The only remaining question, then, is whether trial counsel was ineffective for failing to object to Johnson's sentence in light of *Apprendi*.

The Supreme Court decided *Apprendi* in 2000. *Apprendi* held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In the wake of *Apprendi*, Ohio defense attorneys challenged the constitutionality of § 2929.14(B), which is the statute pursuant

-18-

to which Johnson was sentenced. Ohio courts, however, consistently held that any sentence within the applicable statutory range did not violate the Supreme Court's holding in *Apprendi*, regardless of whether the court engaged in judicial factfinding. *See State v. Graber*, 2003 Ohio App. LEXIS 4828, 6-7 (Ohio Ct. App. 2003).

It was not until the Supreme Court clarified the definition of "statutory maximum" in *Blakely* that any Ohio court determined that Ohio's required judicial factfinding in sentencing violated *Apprendi*. *Blakely* defined *Apprendi's* "statutory maximum" as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 303 (emphasis in the original). The "statutory maximum," then, was not the maximum sentence allowed by statute after the judge finds additional facts, but the maximum the judge may impose without any additional factual findings. *Id.* at 303-04. It was only after *Blakely* that any Ohio appellate court held that the factfinding required by Ohio's sentencing statutes violated the rule in *Apprendi.*

In determining whether Johnson's trial counsel was ineffective for failing to object to Johnson's sentence in light of *Apprendi*, the court must assess counsel's representation by an objective standard of reasonableness at the time of counsel's conduct. At the time of Johnson's sentencing, no Ohio appellate court had found that *Apprendi* prohibited a sentence such as Johnson's. Indeed, every Ohio appellate court to consider the matter found that such sentences were permitted by *Apprendi*. Thus, at the time of sentencing, it was entirely reasonable for Johnson's trial counsel to not object to Johnson's sentence on the basis of *Apprendi*. At that time, there was no likelihood that such an objection would have succeeded. Therefore, the performance of

Johnson's counsel did not fall below an objective standard of reasonableness, and Johnson's trial counsel was not ineffective. As Johnson fails to establish that trial counsel rendered ineffective assistance, the court need not consider whether Johnson was prejudiced by trial counsel's performance.

Because Johnson's trial counsel did not render ineffective assistance, Johnson cannot argue that appellate counsel was ineffective for failing to raise the issue. Johnson's second ground for relief is without merit and should be dismissed.

IV.

For the reasons given above, Johnson's petition for a writ of habeas corpus should be **DENIED.**


Date: August 22, 2011         s/ *Nancy A. Vecchiarelli*
                              United States Magistrate Judge


### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**